UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| JERRY LEE BROWN | : | |
|     Petitioner, | : | PRISONER CASE NO. |
| | : | 3:11-CV-0873 (JCH) |
| v. | : | |
| | : | |
| UNITED STATES OF AMERICA, | : | FEBRUARY 22, 2012 |
|     Respondent. | : | |
| | : | |

**RULING RE:**
**MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE (Doc. No. 1)**

Jerry Brown, a federal prisoner, is currently serving a 121-month sentence following his plea of guilty to one count of conspiracy to possess with intent to distribute cocaine in violation of sections 841(a)(1), 841(b)(1)(C), and 846 of Title 21 of the United States Code. Brown has moved this court to vacate, set aside, or correct his sentence pursuant to section 2255 of Title 28 of the United States Code. He alleges that his attorneys provided him with ineffective assistance by failing to adequately and independently investigate the charges against him, by failing to challenge the conspiracy charge against him, by failing to request an evidentiary hearing at sentencing, and for abandoning him on direct appeal. He further alleges that his plea of guilty was not knowing and voluntary because he did not understand the meaning of the conspiracy charge, and that the quantity of drugs on which his sentence was based is invalid. Because Brown waived his right to collaterally attack his sentence and his counsel's performance and advice were not constitutionally deficient, the court **DENIES** his Petition.

**I.    BACKGROUND**

On June 26, 2008, a federal grand jury returned a twelve count indictment

against Jerry Brown and his half-brother, Dewitt Ferguson.  See Indictment (Doc. No. 1).¹  The Indictment charged that, from May 2006 through July 2007, Brown, Ferguson, and "others known and unknown to the Grand Jury" conspired to possess with intent to distribute a mixture and substance containing a detectable amount of cocaine. Id. at 1. The Indictment also charges Brown with two counts of distribution of cocaine, and Ferguson with six counts of distribution of cocaine base and two counts of distribution of cocaine.  Id.  On July 23, 2008, attorney Frank J. Riccio was appointed to represent Brown, and Brown was arraigned before Magistrate Judge Fitzsimmons, at which time he pled not guilty to each of the three counts against him.  See Minute Entry (Doc. No. 11).

On October 10, 2008, Attorney Riccio moved to withdraw as Brown's counsel because a conflict of interest had arisen.  See Motion (Doc. No. 26).  Judge Nevas granted that Motion, and Attorney Peter J. Schaffer was appointed on October 23, 2008. See Order (Doc. No. 27); Appearance (Doc. No. 28).

  A. The Plea Agreement

Brown entered into a plea agreement by which he pled guilty to the conspiracy charged in the first count of the indictment on January 29, 2009, before Judge Nevas. The Plea Agreement includes a Stipulation of Offense Conduct by which Brown acknowledged that he knowingly conspired to possess with intent to distribute at least five but less than fifteen kilograms of a mixture or substance containing a detectable amount of cocaine between May 2006 and July 2007.  See Plea Agreement (Doc. No.

---

¹ All citations to the court documents refer to the docket in the related criminal proceeding, United States v. Brown, No. 3:08-cr-145 (JCH), except for Brown's Motion to Vacate and the Government's Response to Brown's Motion to Vacate.

97) at 9.  The Plea Agreement also includes an appeals waiver.  Specifically, if Brown's sentence did not exceed 135 months of incarceration, six years of supervised release, and a $2,000,000 fine, Brown would "not appeal or collaterally attack in any proceeding, including but not limited to a motion under 28 U.S.C. § 2255 . . . the conviction or sentence of imprisonment imposed by the Court."  Plea Agreement at 5.  Brown "expressly acknowledge[d] that he [wa]s knowingly and intelligently waiving his appellate rights."  Id.

      B.      Change of Plea Hearing

At the change of plea hearing, Brown told Judge Nevas that there had been sufficient time for Brown to consult with Attorney Schaffer, and Brown represented to the court that Brown was satisfied with Schaffer's representation.  See Transcript of Change of Plea (Doc. No. 114) ("Tr. of Change of Plea") at 5.  Judge Nevas also confirmed that Brown understood that the conspiracy count to which he was pleading meant that the government would have to prove that he was:

> engaged in a conspiracy with a man named Dewitt Ferguson, to possess with intent to distribute, and distribute cocaine, and the elements of that charge are that, one, a conspiracy or unlawful agreement to possess with intent to distribute, and distribute a mixture and substance containing cocaine, and that [Brown] willfully and knowingly became a member of the conspiracy at any point during the time charged in Count One, and that was from in or about May of 2006 to July of 2007, and [he] did so with the intention of furthering an objective of the conspiracy.

Id. at 9.  Brown further told Judge Nevas that he understood everything contained in the plea agreement, and had no questions to discuss with his attorney.  See id. at 17-18.  The Assistant United States Attorney summarized the agreement aloud, noting that the government and defendant agreed that the amount of cocaine involved was at least five but less than fifteen kilograms, and that Brown agreed not to appeal or collaterally

3

attack his conviction or a sentence that did not exceed 135 months. See id. at 11-14. The government's summary also pointed out that the agreement included an acknowledgement that Brown entered it freely and voluntarily because he was guilty. Id. at 15. Finally, the government noted that the plea agreement contained a stipulation of offense conduct, by which Brown acknowledged, inter alia, that the conspiracy involved at least five but less than fifteen kilograms of cocaine. Id. at 16-17.

Brown agreed with the government's summary of the contents of the plea agreement, and that he had discussed the contents of the agreement with his attorney. Id. at 17-18. Judge Nevas also confirmed that Brown understood that he waived his right to appeal, but did not mention that Brown also waived his right to collaterally attack the sentence. See id. at 19-20.

Judge Nevas asked the government to summarize the evidence it would use if the case went to trial. See id. at 21. The government stated that it would introduce the testimony of officers who conducted the investigation that revealed that "Brown is the head of a drug organization that has, for many years, supplied, and continues to supply, powder cocaine in Bridgeport, Connecticut," as well as evidence of two controlled purchases of powder cocaine by a cooperating witness from Brown and testimony from other cooperating witnesses that they had purchased cocaine from Brown and from Brown's co-conspirators. Id. at 22-23. The government would offer testimony that Brown picked up around a kilogram a month of cocaine in New York to distribute in Bridgeport. Id. at 23. The government also stated that it would offer recorded conversations regarding the controlled purchases, and testimony from a chemist that the substance involved cocaine. Id.

After the government offered its summary, Judge Nevas gave Brown the opportunity to disagree with the prosecutor's statements.  Attorney Schaffer's only dispute with the government's summary of its evidence was that Brown would not admit to being the leader of an organization.  Id. at 24.  Otherwise, Brown said he did not disagree with the government's evidence.  Id.  Summarizing his conduct, Brown stated that he "did purchase cocaine in New York for resale in Bridgeport," and confirmed that his plea was voluntary.  Id. at 25, 26.  Although Brown's summary of his conduct did not mention the amount of drugs involved, the prosecutor clarified:

> [THE PROSECUTOR]: . . . According to what he did, he had stipulated that between May 2006 and July 2007 it was more than five and less than fifteen kilograms of cocaine.
> THE COURT:  That's correct, Mr. Brown?
> THE DEFENDANT:  Yes.  I'm not sure of that amount, but yes.  Yes, that's correct.
> [THE PROSECUTOR]:  That's actually driving the guidelines stipulation.  It is in the stipulation that it's more than five kilograms [and] less than fifteen kilograms between that time period.
> THE DEFENDANT:  Yes.
> THE COURT:  You agree to that?
> The Defendant:  Yes.

Id. at 26.  Judge Nevas accepted Brown's plea and adjudged him guilty.  Id. at 27.

Shortly after Brown pled guilty, the case was transferred to Judge Hall.  See Order of Transfer (Doc. No. 44).  Attorney Schaffer subsequently moved for a hearing on bond, see Motion (Doc. No. 45).  The bond hearing was held on April 15, 2009, before Judge Fitzsimmons, who denied bond.  See Minute Entry (Doc. No. 67).

C.   Attorney Schaffer's Withdrawal

On April 21, 2009, Attorney Schaffer moved to withdraw as counsel, and the court held a hearing on the Motion on May 19, 2009.  See Motion to Withdraw (Doc. No. 68).  Attorney Schaffer told the court that Brown had requested that Schaffer withdraw

5

because Brown was dissatisfied with Schaffer's performance at the bond hearing. Specifically, Brown was unhappy that Schaffer had failed to contest every fact the government presented at the bond hearing with which Brown disagreed. See Transcript of Hearing (Doc. No. 88) at 5, 8. Judge Hall discussed a letter she had received from Brown which objected to the government's allegedly innaccurate statements at the post-plea bond hearing. Id. at 5-6. The government took no position on Attorney Schaffer's Motion except to note that "from everything the government has seen to the point, Mr. Schaffer has provided competent counsel and has been in touch with us and negotiated at length and reviewed the evidence and been in touch with the agent." Id. at 10-11. To avoid any possible self-incrimination by Brown or conflict for Schaffer, the court appointed stand-by counsel to discuss Brown's concerns and present them to the court to the degree that such presentation would be in Brown's interest. Id. at 12-14.

After the first court-appointed, stand-by attorney withdrew due to a conflict, see Transcript of Hearing, Doc. No. 89 at 3, another stand-by counsel was appointed. See Minute Entry (Doc. No. 72). The second court-appointed stand-by counsel, Donald Cretella, told the court that Brown had "some misconceptions" that could be easily resolved regarding Attorney Schaffer's strategy at the bond hearing. See Transcript of Hearing (Doc. No. 76) at 4. Because Brown persisted in his request for a new lawyer, however, the court granted Attorney Schaffer's Motion to Withdraw. See id. at 9.

D.   Sentencing and Appeal

On June 17, 2009, Attorney Joseph Patten Brown was appointed to represent Brown. See Appointment (Doc. No. 87). On October 13, 2009, Judge Hall sentenced Brown to 121 months of imprisonment and five years of supervised release. See

Judgment (Doc. No. 98).  Attorney Brown submitted a Notice of Appeal on the same day.  See Notice of Appeal (Doc. No. 99).

On July 30, 2010, Attorney Brown filed a Motion to Withdraw as counsel pursuant to Anders v. California.  See Brief of Defendant-Appellant in Support of Motion to Withdraw, United States v. Jerry Brown, No. 09-4274-cr (2d Cir. July 27, 2010); Anders v. California, 386 U.S. 738, 741 (1967) (permitting court-appointed appellate counsel to move to withdraw if "counsel is convinced, after conscientious investigation, that the appeal is frivolous").  Attorney Brown argued that no non-frivolous ground of appeal existed because Judge Nevas had validly determined that Brown's plea of guilty and waiver of his appeal rights were knowing and voluntary.  See Motion at 12-13.  The Second Circuit issued its Mandate on March 3, 2011, granting Attorney Brown's Motion to Withdraw and granting the government's Motion to Dismiss Brown's appeal.  See Mandate (Doc. No. 103) (finding that defects in Brown's allocution before Judge Nevas did not rise to the level of plain error).

## II.     STANDARD OF REVIEW

"Because requests for habeas corpus relief are in tension with society's strong interest in the finality of criminal convictions, the courts have established rules that make it more difficult for a defendant to upset a conviction by collateral, as opposed to direct, attack."  Ciak v. United States, 59 F.3d 296, 301 (2d Cir. 1995) (internal citation omitted) abrogated on other grounds by Mickens v. Taylor, 535 U.S. 162 (2002).  "As a general rule, relief is available under § 2255 only for a constitutional error, a lack of jurisdiction in the sentencing court, or an error of law that constitutes a fundamental defect which inherently results in a complete miscarriage of justice."  Napoli v. United

States, 32 F.3d 31, 35 (2d Cir. 1994) (internal citations omitted).  Because Brown is proceeding pro se, the court must read his "submissions broadly so as to determine whether they raise any colorable legal claims."  Parisi v. United States, 529 F.3d 134, 139 (2d Cir. 2008) (citing Weixel v. Bd. of Educ., 287 F.3d 138, 145-46 (2d Cir. 2002)).

### III.    DISCUSSION

As broadly construed by the court, Browns claims that Attorney Schaffer was ineffective in advising that Brown accept the plea agreement because: (a) Attorney Schaffer advised Brown to stipulate to conduct involving five to fifteen kilograms of drugs even though there is no evidence to support that amount; and (b) Attorney Schaffer advised Brown to plead guilty to conspiracy even though Brown's co-defendant was not a co-conspirator and Brown had no other co-conspirators who were not government agents or informants.[2]  See Mot. to Vacate, Set Aside, or Correct Sentence (Doc. No. 1) ("Mot. to Vacate") at 8-10.

The government argues that Brown's explicit waiver of his right to appeal or

---

[2] The court cannot discern any claim that Brown lacked knowledge or understanding that his plea agreement waived his right to collaterally attack his conviction and sentence because Judge Nevas did not explicitly raise the waiver.  See  Tr. of Change of Plea at 19 ("you've agreed that you will not appeal your conviction and sentence if the sentence does not exceed 135 months in jail . . .").  But even if Brown had made such a claim, he would not prevail.  The government summarized the plea agreement at the change of plea hearing, including the provision by which "Mr. Brown agree[d] he will not appeal or collaterally attack the conviction or sentence of imprisonment imposed by this Court, if that sentence does not exceed 135 months imprisonment . . ." Id. at 14.  Judge Nevas confirmed that Brown had read and understood the agreement, id. at 10, that Brown agreed with the government's summary of the plea agreement, id. at 17, and that Brown had discussed the plea agreement with Attorney Schaffer. Id. at 18.  Waivers of collateral attack are enforceable even if not specifically addressed at the plea allocution as long as there is sufficient affirmative evidence from which the court can infer that the waiver was knowing and voluntary.  See, e.g., Garcia-Santos v. United States, 273 F.3d 506, 508 (2d Cir. 2001) (affirming knowing and voluntary nature of waiver even though defendant was not specifically asked about it during allocution); Tellado v. United States, 799 F. Supp. 2d 156, 178-81 (D. Conn. 2011) (finding that the record supported the conclusion that defendant's waiver of collateral attack rights was knowing and voluntary even though the court "fail[ed] to utter the magic words 'collateral attack'" because during the plea allocution, the government mentioned the waiver in summarizing the plea agreement, the court noted the appeal waiver generally, and the defendant stated that he had read the plea agreement and discussed it with counsel).

mount a collateral attack on his conviction bars all of his claims. See Government's Response to Def.'s Motion to Vacate (Doc. No. 6) at 2. A knowing and voluntary waiver of appeal or collateral attack is enforceable. See Garcia-Santos v. United States, 273 F.3d 506, 508-09 (2d Cir. 2001). However, a waiver is unenforceable if petitioner can prove that, because his counsel's advice was ineffective, his waiver was not knowing and voluntary. See Parisi v. United States, 529 F.3d 134, 139 (2d Cir. 2002) ("by focusing on the advice [petitioner] received from his attorney, it connects the alleged ineffectiveness . . . with the voluntariness of his plea"). For a petitioner's claim to survive a guilty plea and appeal waiver, "the petitioner must show that the plea agreement was not knowing and voluntary because the advice he received from counsel was not within acceptable standards. Id. at 138 (internal citations omitted).

Claims that defense counsel was ineffective in connection with a plea agreement must challenge the constitutionality of the process by which the agreement was entered, not the events prior to the plea negotiation. See id. at 138 (citing United States v. Hernandez, 242 F.3d 110, 113 (2d Cir. 2001). In particular, the Second Circuit has distinguished between "challenging the attorney's role in shaping the defendant's bargaining position[,] [which] cannot avoid the waiver, [and] challenging the attorney's advice about the bargaining position, by connecting the knowing and voluntary nature of the defendant's plea decision with the attorney's conduct," which does avoid the waiver. Id. at 138-39 (emphasis in original). Accordingly, the court will address only those of Brown's claims that challenge Attorney Schaffer's advice to Brown "to accept the plea agreement" as it relates to the knowing and voluntary nature of his plea decision. Id. at 139.

When raising a claim of ineffective assistance of counsel, the petitioner must satisfy a two-part test. First, he must demonstrate that his counsel's performance "fell below an objective standard of reasonableness." Strickland v. Washington, 466 U.S. 668, 687-88 (1984); see also United States v. Abad, 514 F.3d 271, 275 (2d Cir. 2008). Second, he must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 688. A petitioner "bears the burden of proving that counsel's representation was unreasonable under the prevailing professional norms." Kimmelman v. Morrison, 477 U.S. 365, 381 (1986). The reasonableness of counsel's performance is to be viewed from the perspective of counsel, and "the standard of review is highly deferential." Id. In the context of a guilty plea, a petitioner must show "a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985). Where the error alleged is a failure to investigate, a finding of prejudice depends on "the likelihood that discovery of the evidence would have led counsel to change his recommendation as to the plea. This assessment, in turn, will depend in large part on a prediction whether the evidence likely would have changed the outcome of a trial." Id.

Brown alleges that Attorney Schaffer "at no time conducted a good faith independent investigation into the facts of this case," "failed to subject the prosecution's case to meaningful adversarial testing," and "at no stage questioned or challenged" the quantity range alleged by the government. Mot. to Vacate at 8, 11. Brown claims that the government had no proof of the quantity of drugs it charged and that the quantity

charged had no basis in fact.[3]  See id. at 11-12.  Brown also asserts that the conspiracy to which he pled was "non-existent."  Mot. to Vacate at 8.  He claims that "it is evident that Brown had no agreement with anybody to further this illegal act," and that he sold drugs to Dewitt Ferguson, his co-defendant and half-brother, with the understanding that Ferguson would consume the drugs himself.  See id. at 8-10.  Therefore, Brown argues, Attorney Schaffer's failure to challenge the conspiracy charge and advice that Brown stipulate to a quantity range of five to fifteen kilograms rendered Schaffer's assistance ineffective.  Id. at 8, 12.

Brown's assertions directly contradict his sworn statements at his plea hearing before Judge Nevas.  After confirming Brown's competence, Judge Nevas confirmed that Brown understood that the government would have to prove that Brown:

> [E]ngaged in a conspiracy with a man named Dewitt Ferguson, to possess with intent to distribute, and distribute cocaine, and the elements of that charge are that, one, a conspiracy or an unlawful agreement to possess with intent to distribute, and distribute a mixture and substance containing cocaine, and that you willfully and knowingly became a member of the conspiracy . . . and you did so with the intention of furthering an objective of the conspiracy.

Tr. of Change of Plea at 9.  If the case had proceeded to trial, the government would offer the testimony of investigating officers and cooperating witnesses: that Brown and other co-conspirators sold cocaine to cooperating witnesses; that Brown was "the head of a drug organization that has, for many years, supplied, and continues to supply, powder cocaine in Bridgeport, Connecticut"; and that "Brown picked up approximately a

---

[3] In addition to his more general argument about the quantity of drugs to which he pled, Brown argues that the total quantity was impermissibly based on "surmise and conjecture."  Mot. to Vacate at 11 (citing United States v. Shonubi, 998 F.2d 84, 89-90 (2d Cir. 1993)).  Shonubi held that the government must prove a drug quantity used as a basis for sentencing by a preponderance of the evidence.  Because Brown pled guilty to the quantity of drugs that he now contests, Shonubi is inapposite, and this argument is unavailing.

11

kilogram a month from New York to distribute in Bridgeport, Connecticut." Id. at 22-24. Of this evidence, Brown and Schaffer disagreed only with the government's characterization of Brown as the leader of the drug organization. Id. at 24. Moments later, Brown specifically agreed that the quantity of drugs involved was five to fifteen kilograms. Id. at 26. Brown also agreed with the government's summary of the plea agreement, which included a description of the conspiracy and the quantity of drugs involved. See id. at 16-17.

A defendant's statements at a plea allocution "carry a strong presumption of verity," Blackledge v. Allison, 431 U.S. 63, 74 (1977), and Brown's current allegations that the government lacked proof of conspiracy and quantity do not rebut that presumption. See United States v. DeJesus, 219 F.3d 117, 121 (2d Cir. 2000) (per curiam) (rejecting the defendant's assertion that he did not knowingly waive his right to appeal in his plea agreement because that contention was inconsistent with his statements during the plea colloquy). Courts are entitled to rely on a defendant's sworn statements, and conclusory allegations that contradict those statements cannot meet a defendant's burden of showing that his attorney's performance was unreasonable. See, e.g., United States v. Hernandez, 242 F.3d 110, 112 (2d Cir. 2001) (per curiam) (affirming district court's rejection of challenge to guilty plea with waiver as involuntary or unknowing where defendant gave sworn statement at his plea hearing that he understood the plea and the waiver).

Brown's allegations are further contradicted by the record of the hearings regarding Brown's request for new counsel. At the first such hearing, Attorney Schaffer stated that Brown's dissatisfaction with his representation arose from Schaffer's actions

at the bond hearing before Judge Fitzsimmons and with the initial Presentence Report. See Tr. of Hearing (Doc. No. 88) at 5.  The government's position on Brown's request for new counsel was that "Mr. Schaffer has provided competent counsel and has been in touch with us and negotiated at length and reviewed the evidence and been in touch with the agent."  Id. at 11.  At the second hearing, on May 29, 2009, the court noted that Brown's dissatisfaction with Attorney Schaffer was "not a matter of trial preparation or investigation [or] fighting the government's evidence."  Tr. of Hearing (Doc. No. 89) at 5.

It is clear that Attorney Schaffer did not act unreasonably by advising Brown to enter into a guilty plea to conduct involving five to fifteen kilograms of cocaine.  The government represented that it had evidence to support the five to fifteen kilogram quantity, and Attorney Schaffer reviewed that evidence.  See Tr. of Change of Plea at 23; Tr. of Hearing (Doc. No. 88) at 11.  Brown knowingly and voluntarily stipulated to that quantity at his plea hearing.  Brown has not met his burden to show that further investigation into quantity would have caused Attorney Schaffer to change his recommendation that Brown enter the plea agreement.  This conclusion is reinforced by the government's evidence that Brown and Ferguson participated in controlled buys.[4]  Thus, even if the court were to find Attorney Schaffer's advice unreasonable on this basis, Brown cannot meet the prejudice prong of Strickland, 466 U.S. 668, 691 (1984).

It is also clear that Attorney Schaffer did not act unreasonably by advising Brown

---

[4] Brown's Petition could be construed to argue that he might have reached a more favorable plea agreement with the government if Attorney Schaffer had challenged the government's evidence of drug quantity.  However, challenges to an attorney's role in shaping the defendant's bargaining position do not survive a waiver under Parisi.  See Parisi v. United States, 529 F.3d 134, 138-39 (2d Cir. 2008); see also United States v. Gladney, No. 3:09cr117 (MRK), 2011 WL 381561 at *3 (D. Conn. Feb. 2, 2011) ("A defendant asserting [a claim of ineffective assistance of counsel after having waived appeal and collateral attack rights] cannot rely on merely 'a purported failure [by counsel] to enhance the defendant's case.'" (quoting Parisi, 529 F.3d at 139)).

13

to plead guilty to conspiracy. "To prove a conspiracy, the evidence must show that 'two or more persons agreed to participate in a joint venture intended to commit an unlawful act.'" United States v. Parker, 554 F.3d 230, 234 (2d Cir. 2009) (quoting United States v. Desimone, 119 F.3d 217, 223 (2d Cir. 1997)). Although a buyer-seller relationship alone is insufficient to establish a conspiracy, it may be some evidence of a conspiracy. See United States v. Hawkins, 547 F.3d 66, 72 (2d Cir. 2008) (citing United States v. Wexler, 522 F.3d 194, 208 (2d Cir. 2008)). Further, the defendant's participation in the conspiracy with the requisite criminal intent may be established through circumstantial evidence that supports the inference that a defendant agreed to participate in a conspiracy beyond simply buying or selling. See Hawkins, 547 F.3d at 72. Because there was evidence that Brown conspired with his co-defendant, Ferguson, and evidence that there were other members of the conspiracy who were not government agents, Attorney Schaffer's advice that Brown plead guilty to conspiracy cannot be considered objectively unreasonable when viewed with the proper deference.[5]

Thus, Brown has not demonstrated that Attorney Schaffer's representation during the process that led to Brown's plea agreement was objectively unreasonable. Brown's waiver of his right to appeal or collaterally attack his conviction or sentence is therefore enforceable, and operates to bar Brown's challenges to the effectiveness of Attorney Riccio and Attorney Brown at the pre-plea, sentencing, and appellate stages. See Mot.

---

[5] Brown correctly notes that a conspiracy charge must include someone other than the individual charged and a government agent or informant. See, e.g., Montgomery v. United States, 853 F.2d 83, 85 (2d Cir. 1988). Count One of the Indictment charges that Brown and Ferguson conspired "together with others known and unknown to the Grand Jury." See Indictment at 1. In describing the evidence against Brown, the government offered evidence of "a drug organization," and referred specifically to "co-conspirators." Tr. of Change of Plea at 22-23. Therefore, even were the court to credit Brown's repudiation of his admission that he conspired with Ferguson, the government clearly indicated evidence of other co-conspirators which Brown did not contest.

14

to Vacate at 6, 7, 9, 11; Parisi v. United States, 529 F.3d 134, 138 (2d Cir. 2008).

IV.    CONCLUSION

For the foregoing reasons, Brown's ineffective assistance of counsel claims regarding Attorney Schaffer's representation in the plea process are without merit. All of Brown's other claims are barred by the valid waiver provision in his plea agreement.[6] His Motion to Vacate, Set Aside, or Correct his sentence is **DENIED**.

**SO ORDERED.**

Dated at Bridgeport, Connecticut this 22nd day of February, 2012.

                                                                                    /s/ Janet C. Hall
                                                                                   Janet C. Hall
                                                                                   United States District Judge

---

[6] The court need not reach the government's argument that Brown's claims are procedurally barred. See Government's Response at 16.